UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

RANDALL SCOTT CHIRRICK,                                    Case No. 2:19-cv-01736-AA

        Petitioner,                                        OPINION AND ORDER

  v.

BRAD CAIN, Superintendent,
Snake River Correctional Institution,

        Respondent.
_____

AIKEN, District Judge.

      Petitioner brings this action for federal habeas relief pursuant to 28 U.S.C. § 2254 and challenges his state court convictions for sodomy, unlawful penetration, and sexual abuse. Petitioner contends that, during trial, the state court allowed the admission of statements that were elicited in violation of his Fifth Amendment right against self-incrimination. The Oregon courts rejected Petitioner's claim in decisions that are entitled to deference, and Petitioner is not entitled to federal habeas relief.

Page 1    - OPINION AND ORDER

BACKGROUND

In September 2009, a jury convicted Petitioner of two counts of Sodomy in the First Degree, two counts of Unlawful Sexual Penetration in the First Degree, and four counts of Sexual Abuse in the First Degree. Resp't Ex. 101 at 5-11. Petitioner's convictions arose from the abuse of SL, the daughter of Petitioner's live-in partner, when SL was between four and six years old. Resp't Ex. 102; Resp't Ex. 103 at 245. At that time, SL lived with her mother, Petitioner, and two younger half-siblings. SL subsequently moved to her father's home, and a few years later, SL disclosed to her father and adoptive mother that Petitioner made her "have s-e-x." Resp't Ex. 103 at 252, 302. SL's parents reported her allegations to the police, and she was subsequently interviewed by Roseburg Police Officer Walton and a nurse practitioner. During the interview, SL disclosed numerous acts of sexual abuse committed by Petitioner. *Id.* at 17-18; 253-57, 281-83, 347, 350-53.[1]

Officer Walton and a child-welfare worker, Heather Voss, went to Petitioner's home to speak with him. *Id.* at 18. Voss told Petitioner that she needed to organize a "safety plan" for his other children until SL's allegations could be investigated by law enforcement. *Id.* at 18-19. Officer Walton informed Petitioner that he was "available whenever" and suggested that Petitioner meet with him to resolve the situation more quickly. *Id.* at 18. Petitioner agreed to meet Officer Walton at the Roseburg police station and arrived there approximately one hour later. Officer Walton advised Petitioner that their interview would be recorded and that he was not in custody and could leave at any time. Resp't Ex. 103 at 20-22; *see also* Resp't Exs. 130, 133 at 1. Officer Walton did not provide Petitioner with *Miranda* warnings and proceeded with the interview. Resp't Ex. 103 at 21-22.

_____

[1] SL's interview was recorded and played for the jury. Resp't Ex. 103 at 356-57, 360-61.

After being questioned for almost two hours, Petitioner admitted acts of sexual abuse involving SL. *Id.* at 27; Resp't Ex. 104 at 15-16. Officer Walton left the room to speak with his supervisor while Petitioner waited in the interview room. After several minutes, Petitioner left the interview room to put money in a parking meter to avoid getting a parking ticket. Resp't Ex. 103 at 30. Officer Walton assured Petitioner that parking enforcement officers would not be issuing tickets at that time of day and that the police department would take care of it if Petitioner was ticketed. *Id.* at 30-31. Petitioner returned to the interview room and Officer Walton resumed the interview.

After further questioning, Petitioner disclosed additional acts of sexual abuse. Resp't Ex. 103 at 50. Officer Walton told Petitioner that he was no longer free to leave and advised Petitioner of his *Miranda* rights. Resp't Ex. 103 at 34; Resp't Ex. 135 at 10. Officer Walton left the interview room again to speak with his supervisor about potentially taking Petitioner into custody. Resp't Ex. 103 at 32-33. While Officer Walton conferred with his supervisor, Petitioner called SL's mother on his cellular phone. Resp't Ex. 103 at 40. During that phone call, Petitioner admitted to sexual contact with SL and claimed it was not "forced on her." Resp't Ex. 104 at 19-20; Resp't Ex. 133 at 12.

A few minutes later, Officer Walton returned and told Petitioner that he could return home for the evening. Petitioner agreed take a polygraph examination at an Oregon State Police (OSP) station the following day. Resp't Ex. 103 at 40; Resp't Ex. 104 at 20; Resp't Ex. 133 at 13. Petitioner left the Roseburg police station after being questioned for approximately three hours. Resp't Ex. 103 at 56-57.

Petitioner arrived at the OSP station the next morning. OSP Detective Tabor advised Petitioner of his *Miranda* rights and administered the polygraph examination. Resp't Ex. 103 at

80; Resp't Ex. 104 at 21. At the conclusion of the examination, Detective Tabor told Petitioner that the test indicated he had not been truthful when answering questions. Resp't Ex. 103 at 42; Resp't Ex. 134 at 1. Detective Tabor then questioned Petitioner for approximately fifteen minutes before Officer Walton joined them. Resp't Ex. 134 at 2. Petitioner eventually admitted further acts of sexual abuse involving SL. Resp't Ex. 104 at 21-22; Resp't Ex. 134 at 2.

Petitioner was arrested and ultimately charged by indictment with two counts of Sodomy in the First Degree, two counts of Unlawful Sexual Penetration in the First Degree, and four counts of Sexual Abuse in the First Degree. Resp't Ex. 102; Resp't Ex. 134 at 3. Following his arrest, Petitioner wrote several letters to SL's mother and insisted that he had never "forced" SL to engage in sexual contact. Resp't Ex. 104 at 110-12; Resp't Ex. 121 at 121, 128.

Prior to trial, Petitioner moved to suppress incriminating statements he made during his interviews on grounds that they were elicited in violation of his rights under the United States and Oregon Constitutions. Petitioner argued that his statements were involuntary because Officer Walton questioned him in a custodial setting without providing *Miranda* warnings and promised Petitioner leniency if he confessed. Resp't Ex. 103 at 11. Petitioner further argued that the *Miranda* warnings he eventually received from Officer Walton and Detective Tabor were insufficient to remove the taint of the illegal questioning. Resp't Ex. 103 at 11, 93-94. After conducting a suppression hearing at which Petitioner testified, the trial court denied the motion in a written opinion. Resp't Ex. 135. Petitioner's statements were admitted at trial and a jury convicted him of all charges. Resp't Ex. 101 at 5-11; Resp't Ex. 104 at 276-78.

Petitioner directly appealed his convictions and challenged the denial of his motion to suppress. Resp't Exs. 105-06. The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Resp't Exs. 110-11. Petitioner then sought post-conviction

relief (PCR) in the Oregon courts. Resp't Ex. 112-13. The PCR court denied relief, the Oregon

Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't

Exs. 124, 128-29.

On October 30, 2019, Petitioner sought federal habeas relief in this action.

<u>DISCUSSION</u>

Petitioner raises one Ground for Relief in his Amended Petition. Pet. at 6-7 (ECF No. 55).

Petitioner argues that was in custody and entitled to *Miranda* warnings before he was interviewed

by Officer Walton and that the admission of his statements at trial violated his Fifth Amendment

right against self-incrimination. Petitioner contends that the interrogation process employed by

Officer Walton "circumvented" the protections of *Miranda* and tainted the subsequent warnings

he received. Respondent maintains that the trial court reasonably denied Petitioner's motion to

suppress and that he is not entitled to habeas relief.

A federal court may not grant habeas relief regarding any claim "adjudicated on the merits"

in state court, unless the state court ruling "was contrary to, or involved an unreasonable

application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is

"contrary to" established federal law if it fails to apply the correct Supreme Court authority or

reaches a different result in a case "materially indistinguishable" from relevant Supreme Court

precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000). A state court decision is an "unreasonable application" of clearly established federal law

if the state court identifies the correct legal principle but applies it in an "objectively unreasonable"

manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *see Penry v. Johnson*, 532

U.S. 782, 793 (2001) ("even if the federal habeas court concludes that the state court decision

applied clearly established federal law incorrectly, relief is appropriate only if that application is

also objectively unreasonable"). To meet this highly deferential standard, a petitioner must demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court "adopted a set of prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination" during custodial interrogations. *J.D.B. v. North Carolina*, 564 U.S. 261, 269 (2011). Before questioning individuals in custody, law enforcement officers must advise them of their rights to remain silent and to have an attorney present and inform them that statements made during questioning may be used as evidence. *Id.*; *see also Miranda*, 384 U.S. at 444. "[W]hether a suspect is 'in custody' is an objective inquiry," *J.D.B.*, 564 U.S. at 270, and "the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (internal quotation marks and citations omitted). "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning[.]" *Id.* (internal citations omitted).

The trial court found that Petitioner was not "in full custody" during his initial interview and that *Miranda* warnings were not required before Petitioner admitted to sexually abusing SL. Resp't Ex. 135 at 9-10. Petitioner argues that the trial court unreasonably applied *Miranda* and its progeny because a reasonable person would not have felt free to leave when Voss told Petitioner that SL's allegations needed to be "taken care of right now," Officer Walton utilized deceptive

interrogation techniques during the interview, and Petitioner was questioned for over three hours in a police station interview room. Pet'r Brief at 13-15 (quoting Resp't Ex. 103 at 47).

Even if Voss advised Petitioner that SL's allegations needed to be resolved quickly, her comment did not render Petitioner "in custody" during his subsequent interview at the Roseburg police station. Voss was not a law enforcement officer and did not demand Petitioner's presence at the police station, and Petitioner voluntarily drove to the station. Regardless of Officer Walton's interview methods, he did not threaten Petitioner with arrest or detention, and the trial court reasonably found that Officer Walton was not over-bearing or coercive during the interview.

The length of Petitioner's interview at the police station arguably weighs in favor of a custody finding. However, Petitioner cites no clearly established federal law holding that a three-hour police interview, standing alone, creates a custodial setting that requires *Miranda* warnings. To the contrary, the Supreme Court held that a state court reasonably found no *Miranda* violation when officers interviewed a seventeen-year-old suspect at a police station without informing him that he was free to leave. *Yarborough v. Alvarado*, 541 U.S. 652, 664-66 (2004). The Court noted that additional circumstances supported the reasonableness of the state court's finding, including the fact that "the police did not transport [the suspect] to the station or require him to appear at a particular time"; the suspect was not pressured with "the threat of arrest and prosecution" during questioning; and the suspect was allowed to take breaks. *Id.* at 664-65.

Similarly, several factors support the finding that Petitioner was not in custody. As the trial court found, Petitioner "came on his own volition to the Roseburg Police Department (RPD) for an interview" and Officer Walton "informed [Petitioner] that he was not in custody or under arrest and that he was free to leave or terminate the interview at any time." Resp't Ex. 135 at 2, 10. Petitioner was not physically restrained at any time and returned to the interview room after Officer

Walton assured him that he would not receive a parking ticket. *Id.* at 10. Further, the trial found that Officer Walton's "demeanor and tone of voice was calm, professional, and non-threatening," he was not in uniform during the interview, and he "accommodated Petitioner's requests for water." *Id.* at 2. The trial court also noted several breaks during the interview, "one as long as fifteen minutes." *Id.* at 10.

These findings are consistent with the record and reasonably support the trial court's ruling that Petitioner was not in custody before he admitted to sexually abusing SL. Further, because the trial court reasonably found "no prior illegality," the *Miranda* warnings Petitioner received before his second interview were sufficient. *Id.* at 12.

Accordingly, Petitioner fails to show that the trial court unreasonably applied clearly established federal law, and he is not entitled to habeas relief.

<u>CONCLUSION</u>

The Amended Petition for Writ of Habeas Corpus (ECF No. 55) is DENIED. A Certificate of Appealability is DENIED on the basis that petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

DATED this _5th_ day of June, 2023.


_____/s/Ann Aiken_____
ANN AIKEN
United States District Judge